UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONNEL FITZGERALD,

           Plaintiff,

      v.                                     Case No. 24-cv-1453-bhl

KEVIN CARR, et al.,

           Defendants.

---

## SCREENING ORDER

---

Plaintiff Ronnel Fitzgerald, who is currently serving a state prison sentence at the Oakhill Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Fitzgerald's motion for leave to proceed without prepayment of the filing fee, motion to appoint counsel, and for the screening of the complaint. Dkt. Nos. 1, 2, & 7.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Fitzgerald has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Fitzgerald has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $150.18. The Court will grant Fitzgerald's motion for leave to proceed without prepaying the filing fee.

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

ALLEGATIONS OF THE COMPLAINT

At the relevant time, Fitzgerald was an inmate at the John Burke Correctional Center (JBCC). Dkt. No. 1. Defendants are Department of Corrections (DOC) Secretary Kevin Carr, Warden Quala Champagne, Superintendent Nicholas Redeker, Health Services Manager (HSM) Sandy Sitzman, Nurse Paula Lampe, Nurse Katie Patt, Sergeant (Sgt.) Tim Ryan, Sgt. Chrissy Birschbach, Captain (Cpt.) Nathan Haynes, Parole Commissioner Doug Drankiewicz, Parole Chairperson Jon Epenbach, and Inmate Complaint Examiner (ICE) Chad Engebregtsen. *Id*. at 1-2.

On or around March 31, 2022, Fitzgerald filed "several complaints on staff." *Id*. at 2. Shortly thereafter, Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman conspired to give him a fabricated conduct report. *Id*. They allegedly "lured" him down to the Health Services Unit (HSU) and lied about Fitzgerald allegedly causing a "disturbance" during the appointment. *Id*. In reality, they had "staged a scene," yelling at him for no reason then accusing him of being belligerent. *Id*. When Fitzgerald realized that he was never going to get treatment for his injured leg, he tried to leave HSU. *Id*. The HSU emergency alarms went off and Fitzgerald was detained and placed in a holding cell. *Id*. at 2-3. He was charged with disrespect, disobeying orders, and disruptive conduct. *Id*. at 3.

A conduct report hearing on the incident was held on April 13, 2022 and Sgt. Birschbach was assigned to be Fitzgerald's advocate. *Id*. Instead of helping, she did "everything within her power to hurt Fitzgerald." *Id*. She refused to call witnesses (electrical workers) who were in the HSU during the appointment that might have corroborated his version of events. *Id*. She also

3

Case 2:24-cv-01453-BHL    Filed 04/09/25    Page 3 of 13    Document 12

refused to review or present videotape evidence. *Id*. She called him a "liar" during the hearing and helped convince Cpt. Haynes (the hearing officer) to find him guilty even though there was "no evidence" against him. *Id*. at 3-4. Cpt. Haynes refused to listen to anything Fitzgerald had to say and found him guilty, causing him to lose his minimum-security placement, work release, and the opportunity to earn money. *Id*. at 4. He also received 30 days disciplinary segregation. *Id*. The conduct report was also considered during several parole hearings, which caused deferral of his release from custody by two years. *Id*.

Fitzgerald wrote to Secretary Carr, Warden Champagne, and Superintendent Redeker about the fabricated conduct report, but none of them helped him. *Id*. at 3-4. ICE Engebregtsen also did not help him through the Inmate Complaint Review System, simply "ignoring" staff misconduct. *Id*. at 4 & 6. Fitzgerald eventually appealed the conduct report through a petition for writ of certiorari in Wisconsin state court. *Id*. at 5. The state court found that there were due process violations during the conduct report hearing and reversed the conduct report. *Id*. Nevertheless, Parole Commissioner Drankiewicz and Parole Chairperson Epenbach refused to amend their earlier parole decisions and restore his freedom. *Id*. at 6. For relief, Fitzgerald seeks monetary damages. *Id*. at 10-12.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

1. **Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman**

4

Fitzgerald alleges that Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman retaliated against him by issuing a fabricated conduct report. It appears that Fitzgerald is trying to assert a First Amendment retaliation claim. To state such a claim, he must allege that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Fitzgerald alleges that he filed inmate complaints against Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman and shortly thereafter they fabricated a conduct report against him. They allegedly lured him down to HSU, lied about causing a disturbance during the medical appointment, then gave him a conduct report with false allegations. Filing an inmate complaint is First Amendment protected activity; and receiving a conduct report may deter First Amendment activity in the future. The Court can also reasonably infer, based on the timing of the events, that the inmate complaint may have been at least a motivating factor in issuing the fabricated conduct report. Therefore, Fitzgerald may proceed on a First Amendment retaliation claim against Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman in connection with the fabricated conduct report.

Fitzgerald alleges that Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman also violated his rights under the Health Insurance Portability and Accountability Act (HIPAA), committed malpractice, and engaged in breach of contract. HIPAA does not create a private cause of action for purposes of §1983. *See Carpenter v. Phillips*, 419 Fed. App'x 658, 659 (7th Cir. 2011). And Fitzgerald has alleged no facts implicating malpractice or breach of contract. He does not allege that these defendants actually treated him; the only allegations concerning their conduct is that they lured him to the HSU and filed a fabricated conduct report against him. These

allegations do not plausibly implicate medical malpractice. Similarly, Fitzgerald does not identify any contract he had with any of these defendants or how any potential contract might have been breached. Both claims will be dismissed as to all of the defendants.

### 2. Sgt. Birschbach and Capt. Haynes

Fitzgerald alleges that Sgt. Birschbach and Capt. Haynes violated his due process rights during his conduct report hearing. To state a Fourteenth Amendment due process claim, Fitzgerald must allege that: (1) he was deprived of a constitutionally protected liberty interest; and (2) the procedures he was afforded were constitutionally deficient. *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). "A prisoner's liberty interest…generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). To determine if there is a liberty interest at stake, courts analyze "the combined import of the duration of the segregative confinement and the conditions endured by the prisoner during that period." *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). For example, "transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context." *Id*.

Fitzgerald alleges that Sgt. Birschbach and Capt. Haynes violated his due process rights and, as a result, he served 30 days in disciplinary segregation, lost his minimum-security placement, lost his work release, and lost the opportunity to earn money. It is well established that Fitzgerald has no liberty interest in work release and/or the opportunity to earn money. *Wallace*

*v. Robinson*, 940 F.2d 243 (7th Cir. 1991) (en banc); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000); *Smith v. McCaughtry*, No. 09-C-0404, 2010 WL 697183, at *1 (E.D. Wis. Feb. 25, 2010). And while Fitzgerald may have had a liberty interest in connection with the 30 days disciplinary segregation he served and/or loss of his minimum-security placement, he does not allege any facts or otherwise explain the circumstances or conditions of his confinement during disciplinary segregation or upon his transfer out of the minimum-security facility. The Court therefore cannot reasonably infer that he suffered an atypical and significant hardship in relation to the ordinary incidents of prisoner life. *Lekas,* 405 F.3d at 608. Therefore, he fails to state a claim against Sgt. Birschbach and Capt. Haynes and his claims against both will be dismissed from the case.

### 3. Parole Commissioner Drankiewicz and Parole Chairperson Epenbach

Fitzgerald alleges that Parole Commissioner Drankiewicz and Parole Chairperson Epenbach considered the fabricated conduct report during several parole hearings and rejected his parole requests, resulting in loss of his freedom and deferral of his release from custody for two years. Fitzgerald alleges that, once the fabricated conduct report was reversed through a writ of certiorari in state court, Parole Commissioner Drankiewicz and Parole Chairperson Epenbach should have reconsidered their parole decisions. This is not a claim that Fitzgerald can proceed with under Section 1983. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). An inmate cannot challenge the duration of his confinement under Section 1983, whether he seeks an injunction, *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973), or monetary damages, *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). And this bar applies regardless of the nature of that confinement, "whether a warrant, indictment, information, summons, parole revocation, conviction or other judgment, or disciplinary punishment for the violation of a prison's rules." *Antonelli v. Foster*,

7

104 F.3d 899, 900-01 (7th Cir. 1997). Fitzgerald's remedy is to either file a motion to reconsider with the parole commission—explaining that one of the factors they considered when deferring his release was recently reversed—or to appeal the parole commission's decision to the appropriate body. He cannot collaterally attack the parole commission's decision through a Section 1983 claim. Fitzgerald therefore fails to state a claim against Parole Commissioner Drankiewicz and Parole Chairperson Epenbach and they will be dismissed from this case.

### 4. Secretary Carr, Warden Champagne, Superintendent Redeker, and ICE Engebregtsen

Fitzgerald alleges that he wrote to Secretary Carr, Warden Champagne, and Superintendent Redeker several times about his circumstances and they failed to help him. He alleges that ICE Engebregtsen also failed to help him through the ICRS process. However, "[p]ublic officials do not have a free-floating obligation to put things to rights." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). "Bureaucracies divide tasks [and] no prisoner is entitled to insist that one employee do another's job." *Id*. Fitzgerald cannot engage in a "letter-writing campaign" to numerous high-ranking officials in the DOC then seek damages against every individual he wrote to who did not act. *Id*. In other words, Secretary Carr, Warden Champagne, and Superintendent Redeker were not required to drop what they were doing and personally investigate Fitzgerald's circumstances. They were entitled to delegate that task to the appropriate individuals at the institution. With respect to ICE Engebregtsen, he is not liable for simply doing is job and ruling on an inmate complaint. *Id*. Absent allegations that he "routinely sent each grievance to the shredder without reading it" or otherwise prevented "faithful implementation of the grievance machinery," Fitzgerald does not have a claim against ICE Engebregtsen. The fact that Fitzgerald disagrees with ICE Engebregtsen's decision on an inmate complaint does not show deliberate indifference. Fitzgerald therefore fails to state a claim against Secretary Carr, Warden

Champagne, Superintendent Redeker, and ICE Engebregtsen. They will be dismissed from this case.

**MOTION TO APPOINT COUNSEL**

Fitzgerald also filed a motion to appoint counsel. Dkt. No. 7. He states that he is uneducated, has a learning disability, and is therefore incapable of representing himself. *Id*. He also states that he has made efforts to obtain a lawyer to no avail. *Id*.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks

9

at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-91. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

For purposes of the current motion, the Court will assume that Fitzgerald has made reasonable attempts to recruit counsel on his own. Dkt. No. 7-1. But it is far too early in the case to tell whether the case is too complex for him to adequately represent himself. The complaint has not yet been served on the remaining defendants, and they have not yet filed a responsive pleading. As a result, it's unclear what and how much will be at dispute. Until matters proceed, the Court is not in a position to determine whether the difficulty of the case exceeds Fitzgerald's capacity to present it. To date, Fitzgerald has shown sufficient competence in litigating his case. His complaint is clear and coherent. It describes what happened to him and the relief he seeks. Notwithstanding his learning disability, the Court does not have any concerns about his ability to communicate or present relevant information to the Court. Additionally, along with this screening order, the Court will send Fitzgerald a *pro se* guide prepared by court staff to address common questions that arise in cases filed by prisoners. Fitzgerald should carefully review that guide, which will provide information on next steps to prosecute this case. At this time, the Court will

deny Fitzgerald's motion to appoint counsel without prejudice. Fitzgerald may refile this motion at a later time if his circumstances change.

CONCLUSION

The Court finds that Fitzgerald may proceed on a First Amendment retaliation claim against Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman in connection with the fabricated conduct report.

**IT IS THEREFORE ORDERED** that Fitzgerald's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Fitzgerald's motion to appoint counsel (Dkt. No. 7) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Secretary Carr, Warden Champagne, Sgt. Birschbach, Capt. Haynes, Superintendent Redeker, Parole Commissioner Drankiewicz, Parole Chairperson Epenbach, and ICE Engebregtsen are **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Fitzgerald's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Nurse Lampe, Nurse Patt, Sgt. Ryan, and HSM Sitzman shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Fitzgerald shall collect from his institution trust account the **$199.82** balance of the filing fee by collecting monthly

11

payments from Fitzgerald's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Fitzgerald is transferred to another institution, the transferring institution shall forward a copy of this Order along with Fitzgerald's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Fitzgerald is located.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Fitzgerald is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on April 9, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge