RONNEL FITZGERALD,

                    Plaintiff,

    v.                                            Case No. 24-cv-1453-bhl

PAULA LAMPE et al.,

                    Defendants.

## DECISION AND ORDER

Plaintiff Ronnel Fitzgerald, who is incarcerated at the Sturtevant Transitional Facility, is representing himself in this 42 U.S.C. §1983 case, in which he alleges that Defendants violated his constitutional rights while he was incarcerated at the John Burke Correctional Center. Fitzgerald is proceeding on claims against Defendants Paula Lampe, Katie Patt, Sandy Sitzman, and Timothy Ryan for allegedly fabricating a conduct report in retaliation for Fitzgerald "filing several complaints on staff." Dkt. Nos. 12, 1. Fitzgerald is also proceeding on a retaliation claim against Defendant Nathan Haynes for allegedly finding him guilty of the conduct report because Fitzgerald had submitted inmate complaints against Haynes prior to the disciplinary hearing. Dkt. No. 18. On November 3, 2025, Defendants filed a motion for summary judgment on the ground that Fitzgerald failed to exhaust the available administrative remedies. Dkt. No. 33. For the reasons explained below, the Court will grant Defendants' motion as to Fitzgerald's claim against Lampe, Patt, Sitzman, and Ryan but will deny the motion as to his claim against Haynes.

## BACKGROUND

At the relevant time, Fitzgerald was an inmate at the John Burke Correctional Center, the Dodge Correctional Institution, and the Redgranite Correctional Institution. Defendants worked as health care and corrections staff at the John Burke Correctional Center. On March 30, 2022, Fitzgerald submitted a health services complaint about a knee injury and the "removal" of a lower bunk restriction. He was evaluated in the health services unit the next day, March 31, 2022. What happened at the appointment is hotly disputed, but after the appointment, Fitzgerald was transferred to the Dodge Correctional Institution, where he was placed in temporary lockup

pending a hearing on a conduct report he received for disobeying orders, disrespect, and disruptive conduct. On April 13, 2022, at the disciplinary hearing, Haynes found Fitzgerald guilty of the violations asserted in the conduct report. Fitzgerald was then transferred to Redgranite Correctional Institution on May 3, 2022.

Fitzgerald submitted at least seven inmate complaints about how he was treated at the medical appointment and the disciplinary hearing. On July 19, 2023, the conduct report was expunged from Fitzgerald's record after the Dane County Circuit Court concluded that Haynes had not sufficiently explained the basis for denying Fitzgerald's request to present witnesses and video evidence at the disciplinary hearing. The Circuit Court did not address the merits of the conduct report but concluded that the institution did not deserve a "second kick at the cat." Dkt. No. 36-3 at 7, 48-52. The issue now before the Court is whether any of Fitzgerald's inmate complaints provided notice to the institution of his retaliation claims against the Defendants. As noted, Fitzgerald submitted at least seven inmate complaints relevant to the medical appointment and disciplinary hearing. The Court will briefly summarize them below.

## 1. DCI-2022-5992

On April 5, 2022, Fitzgerald filed an inmate complaint in which he described the issue as: "I complained of a knee injury & low bunk restriction taken from me. I went for a medical appointment & was harassed every time I mentioned low bunk restriction, I was denied medical treatment for my knee & low bunk, then I was placed on TLU, falsely accused." Dkt. No. 36-2 at 12. In describing the details of the issue, Fitzgerald complained that his low bunk restriction had been taken from him shortly after he reinjured his knee on March 30, 2022. He stated that he submitted a health services request to be seen about his injury and the restriction. He asserted that, when he was called to the health services unit, he "was met by an angry lynch mob." Fitzgerald wrote that he was "terrified" and "scared out of [his] mind" because they screamed at him whenever he tried to talk about the restriction. He stated that they refused to give him any medical attention and walked out of the room. He then acknowledged that as he left the exam room, he commented "that was some dirty, rotten, crooked stuff the nurses just did." He concluded that health services unit staff allowed Ryan to interfere in his medical appointment, that he was denied medical treatment, and that he was falsely accused of breaking policy. *Id.* at 12-13. Fitzgerald did not reference having previously made complaints about staff. He only referenced submitting a health services request about his injury and low bunk restriction the day before his appointment.

2

In his appeal of the inmate complaint's dismissal, Fitzgerald clarified that his "complaint was never about a low bunk restriction"; it was about the nurses retaliating against him by allowing Ryan to invade his privacy, violate HIPPA, and bully him. He also stated that the nurses, Ryan, and the HSU Manager "ambushed" him when he came to address his knee injury. He stated that "[t]hey may have assumed that [he] came down to pressure or argue with them about a low bunk restriction but, they were wrong." He concluded that "[t]he HSU department having Sgt. Ryan violate HIPPA law in order to bully me about medical needs is retaliation, writing conduct reports falsely accusing me of rules violations is nothing short of retaliation." Dkt. No. 36-2 at 26-28.

## 2. DCI-2022-6505

On April 22, 2022, Fitzgerald submitted an inmate complaint in which he described the issue as: "My advocate denied me witnesses for my conduct report hearing that could've provided exculpatory evidence." Dkt. No. 36-3 at 12. This inmate complaint does not concern conduct by any of the Defendants.

## 3. DCI-2022-6698

On April 25, 2022, Fitzgerald submitted an inmate complaint in which he described the issue as: "I was accused of violating DOC rules & procedures (303.29 Disrespect) for utilizing my 1st Amendment right to freedom of speech." Dkt. No. 36-4 at 11. In the details describing the incident, Fitzgerald asserts that nurses refused to listen to his complaints about his knee pain and that Ryan was yelling at him, so he "got frustrated a[nd] told Sgt. Ryan that these were some dirty, rotten crooked nurses." He further explained that he learned that his "words fall under the protection of the First Amendment" and that he did not mean for the words to be disrespectful, only critical of the nurses for treating him poorly, setting him up, allowing Ryan to interfere with his medical care, and refusing to provide him with medical treatment. *Id.* at 11-13.

## 4. DCI-2022-7147

On May 1, 2022, Fitzgerald submitted an inmate complaint in which he described the issue as: "I was denied a chance to present testimony and documentary evidence to an impartial decision-maker. I want the hearing officer's decision overturned & a custody change to community, and an endorsement for a parole grant." Dkt. No. 36-5 at 5. In the details describing the incident, Fitzgerald explained that he had asked Haynes to recuse himself from being the hearing officer at his disciplinary hearing because of the many complaints Fitzgerald had previously submitted about him and the health services department, which he was responsible for, but Haynes refused.

3

Fitzgerald further explained that during the disciplinary hearing, Haynes denied his requests for evidence, ignored him, interrupted him, and played on his computer. Fitzgerald concluded that Haynes took the side of staff without even considering his side just like he previously stated he would. *Id.* at 5-7.

**5.  DCI-2022-7151**

On April 29, 2022, Fitzgerald submitted an inmate complaint in which he described the issue as: "I was denied exculpatory evidence at my C.R. hearing, making it impossible to defend myself against accusations of misconduct. I want the hearing decision overturned and a reduction in my custody to community, and a[n] endorsement for a parole grant." Dkt. No. 36-6 at 5. In details describing the incident, Fitzgerald explained that he received "a conduct report that was 99% filled [with] false information." He asserted that video footage from the health services unit would contradict the narrative in the conduct report. *Id.* at 5-7.

**6.  RCI-2022-7575**

On May 9, 2022, Fitzgerald submitted an inmate complaint in which he described the issue as: "My advocate spoke out against me at my conduct report hearing and my appeal of the guilty finding was affirmed. I want the decision reversed, because it violated due process." Dkt. No. 36-7. This inmate complaint does not concern conduct by any of the Defendants.

**7.  RCI-2022-9841**

On June 20, 2022, Fitzgerald submitted an inmate complaint in which he described the issue as: "After filing complaints against the HSU department & complaining to them about a restriction, the HSU dept. at J.B.C.C. retaliated against me, writing false medical reports & tampering with my medical records." Dkt. No. 50-1 at 29. In details describing the incident, Fitzgerald stated that he had "filed complaints against the HSU department of John Burke Corr. Center in November of 2021." He further stated that when he asked a nurse about his low bunk restriction, she was rude to him and told him he never had one. He asserted that he then submitted a request to be seen and that the next day he was "set up." He explained that his privacy was invaded, he was denied medical treatment, and he was falsely accused of rules violations "in retaliation." He clarified, however, that "this complaint is not about that." He went on to explain that Nurse Patt had told him that he had a low bunk restriction from 2019 but when he requested his medical file, the restriction was not in his file. Fitzgerald concluded that someone had taken the restriction out of his file "in retaliation of [him] filing complaints & complaining about

4

restrictions." He also accused Nurse Patt of lying in a medical report "in retaliation for prior complaints." *Id.* at 29-31.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Prison Litigation Reform Act, which applies to this case because Fitzgerald was a prisoner when he brought this action, provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The Seventh Circuit applies a "strict compliance approach to exhaustion," *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The Inmate Complaint Review System allows Wisconsin inmates to file complaints about their living conditions and staff actions that personally affect them. Wis. Admin. Code DOC §310.06. Each inmate complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." §310.07(5), (6). The Seventh Circuit has explained that "an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress

is sought." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). "The exhaustion requirement protects the prison's administrative authority by giving it an opportunity to correct its own mistakes before suit is filed against it in federal court." *Id.* Accordingly, "a prisoner satisfies the exhaustion requirement when he gives a prison notice of, and opportunity to correct, a problem." *Id.* at 996. He "need not lay out the facts, articulate the legal theories, or demand particular relief. All the [prisoner] need do is object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Fitzgerald is proceeding with two retaliation claims. The first is against the health care and corrections staff who Fitzgerald claims "ambushed" him at a medical appointment because he had "fil[ed] several complaints on staff." The second is against the disciplinary hearing officer who Fitzgerald claims predetermined the outcome of the conduct report because Fitzgerald had previously submitted inmate complaints about him and the department he supervised. In the case of retaliation claims, an inmate complaint must "put the prison on notice about what protected conduct motivated [the prison official] to retaliate against him." *Maus v. Pagel*, No. 23-2855, 2024 WL 1342582 (7th Cir. Mar. 29, 2024). In other words, "[t]he plaintiff must identify some kind of activity he engaged in (for example, filing grievances against a defendant) and then connect that activity to the defendant's retaliatory conduct." *Rogers v. Webster*, No. 22-cv-1036, 2024 WL 1051321, at *4 (E.D. Wis. Mar. 11, 2024). The Court will address each of Fitzgerald's claims in turn.

1. **None of Fitzgerald's inmate complaints provided notice to his institution that he believed the medical and corrections staff "ambushed" him because he had previously complained about them.**

Fitzgerald submitted three inmate complaints about the March 31, 2022 medical appointment: DCI-2022-5992, DCI-2022-6698, and RCI-2022-9841. A review of these three complaints confirms that Fitzgerald did not put his institution of notice of any alleged retaliation based on previous protected conduct.

In the first inmate complaint, DCI-2022-5992, Fitzgerald describes at length three forms of allegedly retaliatory conduct: (1) corrections staff interfering in his medical appointment; (2) medical staff denying him medical treatment; and (3) being falsely accused of breaking policy. But nowhere in the inmate complaint does Fitzgerald suggest any of this conduct was in response to protected activity he previously engaged in. Fitzgerald asserts that he submitted a health services request about his knee injury and the low bunk restriction, but a routine request for

6

medical treatment does not reasonably suggest a motivation for retaliatory conduct. Moreover, in this lawsuit, Fitzgerald alleges that Defendants acted as they did because he "fil[ed] several complaints" about them, but Fitzgerald makes no mention in this inmate complaint of previously filing complaints about staff.

Fitzgerald asserts that he clarified in the appeal of the dismissal that his inmate complaint was about staff's retaliatory conduct. But merely using the word "retaliation" is insufficient to make it so. Once again, Fitzgerald simply did not identify in his appeal the protected activity that motivated the conduct about which he complained. Instead, he posited that staff may have acted as they did because they "may have assumed that [he] came down to pressure or argue with them about a low bunk restriction but, they were wrong." But staff engaging in misconduct because they mistakenly *anticipated* that Fitzgerald would act out is not the same as staff engaging in misconduct *in response to* Fitzgerald's prior protected activity. In short, inmate complaint DCI-2022-5992 did not provide adequate notice to the institution that medical and corrections staff retaliated against Fitzgerald because he had previously engaged in protected activity.

Fitzgerald's second inmate complaint, DCI-2022-6698, also did not provide the institution with adequate notice of his retaliation claim. Fitzgerald only challenged the propriety of the conduct report, arguing that the charge of disrespect was wrong because he had a protected right under the First Amendment to characterize the nurses' conduct as crooked and dirty. The inmate complaint makes no reference to staff acting as they did because Fitzgerald had engaged in protected activity before the March 31 medical appointment.

Finally, the third complaint, RCI-2022-9841, also did not provide the institution notice of the claim at issue in this case. In this inmate complaint, Fitzgerald clearly laid out the protected activity that motivated retaliatory conduct: He stated that he had "filed complaints against the HSU department of John Burke Corr. Center in November of 2021." But the retaliatory conduct that Fitzgerald complained about in the inmate complaint was someone improperly removing the low bunk restriction from his medical file and Nurse Patt including false information in his medical records. *That is not the retaliation claim that Fitzgerald is proceeding with in this case.* Accordingly, RCI-2022-9841 did not provide the institution with notice of his belief that medical and corrections staff retaliated against him by "ambushing" him in the health services unit because he had previously submitted inmate complaints about staff. Fitzgerald therefore failed to exhaust

7

the administrative remedies on this claim, and Lampe, Patt, Sitzman, and Ryan are entitled to summary judgment.

**2. Inmate complaint DCI-2022-7147 provided notice to Fitzgerald's institution that he believed Haynes found him guilty of the conduct report because Fitzgerald had previously submitted complaints about him and the department he supervised.**

In DCI-2022-7147, Fitzgerald described the ways he believed Haynes had acted improperly during the disciplinary hearing. He also highlighted that he had asked Haynes to recuse himself as the hearing officer because Fitzgerald had previously submitted inmate complaints about him and the department he supervised. Fitzgerald therefore provided the institution with notice of what he believed to be retaliatory conduct *and* the protected activity that prompted that conduct. Defendants assert that the inmate complaint suggested a due process claim, not a retaliation claim. But "a prisoner satisfies the exhaustion requirement when he gives a prison notice of, and opportunity to correct, a problem." *Schillinger*, 954 F.3d at 995. He "need not lay out the facts, *articulate the legal theories*, or demand particular relief. All the [prisoner] need do is object intelligibly to some asserted shortcoming." *Strong*, 297 F.3d at 650 (emphasis added). Fitzgerald was not required to use the word "retaliation"; he was required only to describe what he believed to be improper conduct by a staff member done in response to or because of his protected activity. Fitzgerald did just that in DCI-2022-7147, so Haynes is not entitled to summary judgment on this claim.

Discovery closed on March 20, 2026. If the parties want to move for summary judgment on the merits of Fitzgerald's claim against Haynes, they may do so by **May 4, 2026**. The Court reminds Fitzgerald that he is not required to file a summary judgment motion. Because the plaintiff has the burden of proof at trial, it is generally the defendant who moves for summary judgment on the ground that the plaintiff lacks evidence to meet that burden. If Haynes files a summary judgment motion, the case will survive and proceed to trial if the plaintiff is able to demonstrate in his response materials that there is a dispute of material fact. If neither party moves for summary judgment, the case will proceed to trial.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment on exhaustion grounds (Dkt. No. 33) is **GRANTED** as to Fitzgerald's claim against Lampe, Patt, Sitzman, and Ryan and **DENIED** as to Fitzgerald's claim against Haynes. The clerk's office is directed to terminate Lampe, Patt, Sitzman, and Ryan from this action.

8

**IT IS FURTHER ORDERED** that the parties may move for summary judgment on the merits by **May 4, 2026**.

Dated at Milwaukee, Wisconsin this 2nd day of April, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge